UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:17-cv-203-MOC

| | |
|---|---|
| **RIGOBERTO SOLANO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on plaintiff's (#10) and defendant's (#12) cross Motions for Summary Judgment. The matter is ripe for review. Having carefully considered each motion and reviewed the pleadings, the court enters the following findings and Order.

## FINDINGS AND CONCLUSIONS

**I.     Administrative History**

Plaintiff applied for a period of disability and disability insurance benefits under title II of the Act in May 2015, alleging disability beginning June 17, 2013. (Tr. 10). Plaintiff's application was denied initially and upon reconsideration. Id. At plaintiff's request, Administrative Law Judge Mary Ryerse ("the ALJ") held a hearing on his claim on April 7, 2017. (Tr. 34-70). On May 23, 2017, the ALJ found that plaintiff was not disabled from his alleged onset date through the date he was last insured for benefits. (Tr. 10-22). Plaintiff sought review by the Appeals Council, but the Appeals Council denied his request in September 2017, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1). Having thus exhausted his administrative remedies, plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision.

## II. Factual Background

The court adopts and incorporates the ALJ's factual findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, supra.

Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

A. **Introduction**

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. Here, the court finds that the ALJ's decision was supported by substantial evidence, and it will thus be affirmed.

B. **Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

At step one of the sequential evaluation, the ALJ found that plaintiff has not engaged in substantial gainful activity ("SGA") since his alleged onset date of June 17, 2013, 2010 through his date last insured of December 31, 2016. (Tr. 12). At step two, the ALJ found that plaintiff has the following severe impairments: paroxysmal SVT s/p AICD implantation; cardiomyopathy; congestive heart failure; ventricular tachycardia; cervical radiculopathy; lumbar radiculopathy; obesity; depression; and anxiety. Id. At step three, the ALJ found that none of plaintiff's medically determinable impairments, singly or in combination with each other, meets the severity of an impairment in the Listing. (Tr. 13-14).

Then, before step four, the ALJ found that plaintiff had the RFC to perform sedentary work, with the following limitations: he is limited to occasional climbing of ramps and stairs, ladders, ropes, or scaffolds, balancing, stooping, kneeling, crouching, and crawling; he should avoid concentrated exposure to extreme cold and heat, dust, odor, fumes, and other pulmonary irritants; he must avoid hazards such as working at unprotected heights or around moving mechanical machinery; and he is limited to performing simple routine tasks and to maintaining concentration,

persistence, and pace for two-hour periods during the workday, as well as a work environment with infrequent changes to work routine. (Tr. 14-20).

At step four, the ALJ found that plaintiff is unable to perform any past relevant work due to his RFC. (Tr. 20). At step five, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including surveillance system monitor, stuffer, and sorter. (Tr. 20-21). As a result, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. (Tr. 21-22).

**D. Discussion**

The court has closely read plaintiff's memorandum (#11) in support of his motion (#10). Plaintiff argues that the ALJ erred by failing to resolve apparent conflicts between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"), by failing to properly analyze plaintiff's RFC, and by improperly assessing medical opinion evidence. The court will consider each allegation in turn.

*1. The ALJ's analysis of the VE's testimony*

First, the court will consider plaintiff's allegation that the ALJ's analysis of the VE's testimony was improper. Plaintiff argues that the job of surveillance system monitor is not unskilled and therefore in conflict with plaintiff's RFC, that the VE misidentified the job of sorter and it conflicts with plaintiff's RFC, and that the ALJ failed to resolve apparent conflicts between the VE's testimony and the DOT.

Here, the court finds no basis for remand. First, plaintiff offers only his own speculation that surveillance system operator is not an unskilled job. In his arguments, plaintiff does not cite to the DOT or another judicially recognized source but instead points to postings on the

Transportation Security Administration's website and job descriptions of gaming surveillance officers and gaming investigators on *O*Net* as proof that surveillance system operator is a skilled occupation. #11 at 10-11. Such speculation cannot overcome the VE's testimony or the DOT, and can hardly be said to create an apparent conflict that would result in remand.

As for the misidentification of sorter, the court agrees with plaintiff that the VE wrongly identified sorter as a sedentary job when it actually involves light work, and notes that defendant concedes this apparent error. However, as outlined below, work remains in significant numbers in the national economy for plaintiff to perform that does not conflict with the DOT, rendering this error by the ALJ and VE harmless since a different result would not have been reached. See Smith v. Colvin, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (explaining that an error was harmless where "remand would not lead to a different result").

As for apparent conflicts between the VE's testimony and the DOT, the jobs suggested by the VE and endorsed by the ALJ appear to require General Educational Development ("GED") Reasoning Levels ranging from 2 to 3. GED levels range from Level 1 (lowest reasoning ability) to Level 6 (highest reasoning ability). Whether there is an apparent conflict between simple, routine, repetitive work and GED Level 3 is far from settled. The Fourth Circuit has yet to provide binding precedent on this issue, and in examining persuasive precedent elsewhere, the court has found that a circuit split exists. Compare Zavalin v. Colvin, 778 F.3d 842, 846-47 (9th Cir. 2015) (finding an apparent conflict exists) and Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (same) with Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (finding no apparent conflict exists) and Hillier v. Soc. Sec. Admin., 486 F.3d 359, 367 (8th Cir. 2007) (rejecting a *per se* conflict but noting tension between GED Level 3 and simple, routine, repetitive tasks). Indeed, even this

district's case law is split on the matter. Compare Lorch v. Berryhill, 2017 WL 1234203 (W.D.N.C. 2017) (finding an apparent conflict exists) and Adkins v. Berryhill, 2017 WL 1089194 (W.D.N.C. 2017) (same) with Davis v. Berryhill, 2017 WL 4248811 (W.D.N.C. 2017) (finding no apparent conflict) and Martin v. Colvin, 2015 WL 9094738 (W.D.N.C. 2015) (same) and Carringer v. Colvin, 2014 WL 1281122 (W.D.N.C. 2014) (same).

However, only the job of surveillance system monitor is Level 3. Even assuming an apparent conflict exists there, the job of stuffer remains; with 354,810 jobs nationally, it alone is more than sufficient to meet the ALJ's burden. See Cogar v. Colvin, 2014 WL 1713795 (W.D.N.C. 2014) (holding that 35,000 jobs nationally accounted for sufficient numbers). And the court cannot find an apparent conflict exists with a Level 2 job like stuffer. Broadly speaking, Level 2 jobs require the ability to "[a]pply common sense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT App. C, 1991 WL 688702 (1996). While plaintiff argues that an unpublished Fourth Circuit decision suggests that Level 2 jobs are incompatible, that decision involved a plaintiff limited even further to only one- or two-step instructions, not a limitation like plaintiff's of simple, routine, repetitive work. Henderson v. Colvin, 643 F. App'x. 273, 276-77 (4th Cir. 2016). This and other courts agree that such a ranking does not imply an apparent conflict with simple, routine, repetitive work, as do multiple circuit courts. See Thacker v. Astrue, 2011 WL 7154218 (W.D.N.C. 2011); Weaver v. Colvin, 2013 WL 3989561 (M.D.N.C. 2013); McCullough v. Colvin, 2015 WL 4757278 (D.S.C. 2015); Hackett, 395 F.3d at 1175; Money v. Barnhart, 91 F. App'x. 210, 214 (3d Cir. 2004) (holding that working at Level 2 "would not contradict the mandate that [the] work be simple, routine and repetitive"). Thus, while the ALJ

erred with the job of sorter and may have erred with the job of surveillance system operator, the job of stuffer alone is sufficient to meet the ALJ's burden. As such, the court cannot find an issue for remand on this basis.

### 2. *The ALJ's analysis of plaintiff's RFC*

Next, the court considers plaintiff's allegation that the ALJ improperly analyzed plaintiff's RFC. Plaintiff argues that the ALJ failed to explain her findings on plaintiff's mental and physical capabilities; specifically, plaintiff contends the ALJ erred by failing to consider plaintiff's ability to perform detailed tasks, notwithstanding the opinion of consultative examiner Carla Duszlak, and that she failed to fully explain plaintiff's ability to stay on task for two hour periods. Plaintiff also argues that the ALJ failed to fully consider whether plaintiff could maintain the physical ability to stay on task, alleging that the ALJ failed to make specific findings on the frequency of plaintiff's severe impairments and their effect on plaintiff.

Here, the court has reviewed the ALJ's findings on plaintiff's RFC, and cannot find a basis for remand. (Tr. 13-20). Contrary to plaintiff's assertions, the ALJ did consider Dr. Duszlak's assessment, explained why she assigned it some weight, and agreed with Dr. Duszlak that plaintiff could perform simple routine tasks. (Tr. 15, 18-19). Further, the ALJ explained why Dr. Duszlak's opinion did not merit more weight, explaining that minimal treatment and objective findings contradict other aspects of Dr. Duszlak's opinion, in conjunction with plaintiff's reported activities of daily living. (Tr. 19). And contrary to plaintiff's assertions that the ALJ failed to offer an explanation for plaintiff's ability to stay on task, the ALJ specifically cited Dr. Duszlak's opinion as justification for plaintiff's ability to perform simple tasks, as well as the opinions of State agency physicians who found that plaintiff could sustain concentration at the level needed to perform

simple, routine, repetitive tasks. (Tr. 19, 83). As such, the ALJ has sufficiently justified her mental RFC findings with substantial evidence. As for plaintiff's physical RFC, the ALJ discussed evidence of plaintiff's physical condition at length, from the limiting effects of his symptoms to treatment records of heart issues, pain, and obesity to opinion evidence. (Tr. 16-19). Indeed, in her analysis the ALJ actually found it appropriate to limit plaintiff's physical functioning beyond what State agency consultants found. (Tr. 19). As such, the ALJ discussed the evidence of record on plaintiff's RFC thoroughly, allowing this court to conduct meaningful review, and clearly justified her RFC findings with substantial evidence. Thus, the court cannot find a basis for remand exists on this issue.

### 3. *The ALJ's assessment of medical opinion evidence*

Finally, the court considers plaintiff's allegation that the ALJ improperly weighed the medical opinion evidence of record. Specifically, plaintiff argues that the ALJ failed to give appropriate weight to the opinion of Dr. John H. Edmund. However, weighing evidence and adjusting it to favor one party over the other is not the job of the court at this stage. Indeed, "[i]n reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of [the ALJ]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). Should the evidence conflict, "the duty to resolve conflicts . . . rests with the ALJ, not with a reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). All the court must do is examine the ALJ's opinion and the evidence of record to determine if an opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c).

Here, the court finds that the ALJ's explanation of the weight she assigned to Dr. Edmund's opinion is supported by substantial evidence. The ALJ did take note of Dr. Edmund's opinion. (Tr. 19). However, the ALJ also explained that Dr. Edmund's opinion is outdated, in that Dr. Edmund relied on plaintiff's defibrillator regularly discharging; however, that defibrillator error has since been corrected and plaintiff has testified that the defibrillator now only discharges roughly five times per month. Id. Additionally, the ALJ explained that, while Dr. Edmund's opinion suggested plaintiff lacked the stamina for work, this is contradicted by cardiac treatment notes that document stability in his cardiac condition, as well as other aspects of the record like plaintiff's activities of daily living. Id. In doing so, the ALJ has provided a narrative discussion of their opinion, as well as substantial evidence in support. As such, the court finds no basis for remand on this issue.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's complaint, the cross Motions for Summary Judgment, and accompanying memoranda. Review of the entire record reveals that the decision of the ALJ was supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. As this court finds that there was not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Summary Judgment (#10) is **DENIED**, the Commissioner's Motion for Summary Judgment (#12) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

Signed: July 3, 2018

Max O. Cogburn Jr
United States District Judge